Good morning, Your Honors. May it please the Court, Greg Rapoport for the Appellant, Arevalo Tortilleria, Inc. If I may, I'd like to reserve four minutes for rebuttal. In the motion to dismiss in the District Court, the appellee was required to show two things. First, it was required to show that it had the right to enforce at least one of the two contracts that included an arbitration agreement. And secondly, it was required to show that at least one of those arbitration agreements was, in fact, formed as an agreement under California law. In opposing the motion, the appellant was required to show a genuine issue of fact as to contract formation. I'm confused about your position in this case, and maybe you can help me with it. Is it your position that the other side, if you will, didn't carry its burden of showing that there was such an agreement, or are you denying that there was such an agreement? We're showing, I'm arguing that they didn't carry their burden of showing that there was such an agreement. Right. This is kind of a strange — all cases are strange. But get this case, and you don't say in response to the motion to arbitrate, hey, we never signed that agreement, there's no such agreement. You simply say, well, the son of the signator doesn't recognize his signature. Right. You don't say, and I can't ask you why not, the signator doesn't say, hey, that's not my signature. You don't deny that there's — you don't deny it. You just simply say, we put you to your burden, if you will. Right. Is that your argument, that you put them to their burden, they didn't meet it? Well, essentially, that's correct in the context of a motion to compel arbitration where — Well, the Second Circuit seems to say, in order to put this at issue, you've got to say something like, we never entered into that agreement. That's not something we did. Your Honor, you're referring to the doctor's case. Yeah. And that standard has not been adopted in the Ninth Circuit. I know, but we might adopt it. Well, and that standard would not be appropriate, though, in the context of this motion. Why shouldn't we at least require you to show up in court and say, we never signed that agreement? Your Honor, we did allege in the complaint that the contract — and again, we were referring only to the RPA, not to the request to bind — that the RPA was unenforceable for a number of reasons, including fraud in the execution. Right. But you never said, when they filed the motion to compel arbitration, Judge, we never signed that agreement. Well — Well, you know, let's have a trial. And because then — then the signatory would have been called as a witness. I assume he's alive. And he would have had to take the stand and either swear that he signed it or didn't sign it. Right. So what you did was — cute may be the wrong word, but it's a little cute — you said, well, you haven't proved we've signed it, because all you've — all your guy said was he sent it to us and it came back signed. Your Honor — And you've got to do more. Right. The district — any time — look, any time an authenticity of a signature or handwriting is at issue, the district judge or the trial court can require the parties to submit specimens of handwriting and can make a determination on the facts as to whether handwriting or a signature or initials is authentic. But don't you at least have to submit — I mean, is the signatory unavailable? Your Honor, the record doesn't go to that issue. We would have to — and that was something that — that was something that the appellee could certainly have raised in its papers. They could certainly have put in examples of other signatures. Right. Again, it was their burden. Yeah, but fraud in the inducement doesn't seem — Not in the inducement, Your Honor, in the execution. In the execution. So your position is — I want to make sure, because it seems to me if you take this position and there's a Rule 11 issue, your position is that this is a fraudulent document, that your client never signed it, somebody else signed your name to — is that your position? Your Honor, the — to answer your question, the appellee put in the contract into evidence. No, I know all that. I'm not asking that question. My question is, is your position in this court and in the district court that somebody else signed your client's name to this without authorization? I'm not aware of what happened leading up to someone else putting a signature, but that was not my client's signature. So your position is that nobody on your side signed this document? I — I'm not privy to what happened in 2008. But don't you have to — don't you have to, in order to put the arbitration clause at issue, come into court and say, we never entered into that agreement? We are saying that that agreement on which they rely for arbitration does not have our signatures and it's their burden to show that a contract was formed and they failed to do that. Right. So your position is that they didn't meet their burden. Your position isn't that you never entered into an arbitration agreement? At this stage, we have not — we have not made an affirmative statement. Right. So if — if the — if we adopt the Second Circuit view, which is that you have to affirmatively disclaim that you entered into an arbitration — That's not the Second Circuit view. What do you think the Second Circuit view is? The Second Circuit view is that the — that the plaintiff must unequivocally allege in its complaint and or in its opposition to the motion to compel that the contract was not formed. And that's what we allege and that's what we say in our — in our opposition, not only because of the signature issue, but also because of the uncertainty between the two conflicting arbitration clauses and between those clauses and the dispute resolution provision in the insurance policy itself. So let's assume that you admitted that you signed the two clauses. The conflict between them would be a matter for the arbitrators, wouldn't it? If contract formation was not an issue in terms of the signatures? Yes. In other words, your own — let's assume that there was no argument that this wasn't — that you hadn't signed both of them. And you said, we admit we signed both of them, but there's a conflict. The arbitrators would figure out — No, it's not — no, it's not for the arbitrators, because contract formation also depends on mutual assent based on certainty of terms. That's not an issue for the arbitrator. That's an issue at the outset for the court to determine. The parties cannot be compelled to arbitrate something that they didn't agree to. One clause says you arbitrate in Nebraska under Nebraska Uniform Arbitration Act, which, by the way, says you can't arbitrate this dispute. And the other one says — oh, and that's under JAMS. And then the other one says, well, you arbitrate in the British Virgin Islands under AAA rules. Those are irreconcilably in conflict. Then you add in the insurance policy to which both of these agreements unequivocally relate, and that says dispute resolution is according to the Administrative Procedures Act insurance code and these dispute resolutions relating to rate proceedings and filings. What are you seeking? What are we seeking? Yeah, you win this appeal. What do you get? Right. Right. We would like a remand to the district court that instructs the district court to deny the — No way. There's a factual dispute here. The district court should — On the issue of contract formation based on the signatures, there is a factual dispute. Okay, so — You would have to go to a jury. So you would have to go to a — no, you never asked for a jury. Yes, in the complaint, we demanded a jury. Don't you have to — don't you have to demand a jury if you want to try your arbitration issue? The contract formation, don't you have to demand a jury when you oppose arbitration? No, not according to the court in — I believe it's G.I.B., LLC. You think it's enough to have demanded a jury on your main claim in the complaint? Yes, it's enough to do that, and it's not a waiver on the opposition not to ask the judge. See, the way I read the Arbitration Act, and maybe I read it incorrectly, you would have to — when you deny that a contract was entered into you, that an arbitration agreement was entered into, you then have to demand a jury trial on that issue. You don't think — No, no, the Arbitration Act — I'm sorry, Section 4 of the Arbitration Act just says if a jury has been demanded. That can refer to the complaint. So you think it's — If it hasn't been demanded, then it doesn't — If the jury — the demand — the general demand for a jury on your claim is enough, you think? Right. Right. But — What case do you think says that? That a general demand is enough? Yeah. I believe the GIB case would stand for that. Because I guess my practical question was, if you go back and try this in front of this judge — Right. — and he has to try it, you're going to lose, aren't you? Your Honor, I believe that if we went back and actually had a trier-of-fact look at the issue of whether a contract was formed, we would be getting into other issues such as ratification, which is something that has not come up in this appeal. And to my specific question, you think that you're — I mean, I think your position is clear, that your general jury demand in your complaint — Right. — suffices to demand a jury on the issue of whether or not this case is arbitrable. Not arbitrable for all — under all — No, I understand. — conditions of that word. No, but all the district court can determine in this case is whether or not you entered into an arbitration agreement. And you say that your general demand for a jury trial on your substantive claims is sufficient to trigger Section 4 of the Arbitration Act. I would say that — It's not in front of us, so I don't want to watch you spend too much time on it. Right. I mean, the statute just says — You'll have to argue that to the district judge if you go back, I take it. — if no jury trial be demanded by the party alleged to be in default, et cetera. There's no distinction there between a demand made in the complaint versus in the opposition to motion. Yeah, but I thought the case is focused on making that. But, again, let's not spend time on it. Your Honor, another and a bigger issue — You've got four minutes. Right. Another issue and a bigger issue in this case, really, in addition to the signatures and in addition to the uncertainty, which, again — and there's a lot of material that we submitted in the motion for judicial notice, and that goes to the district court's comment that the dispute resolution provision in the insurance policy was not intended to deal with collection actions. And that's certainly not the case when you look at the — when you look at the exact same dispute has come up under that dispute resolution clause in the insurance policy with the insurance commissioner in a case called Shasta Linen. That's in the supplemental motion to take judicial notice. That case on the identical RPA raises all sorts of issues relating to enforcement of the RPA by the appellee. So that dispute resolution provision certainly does apply to the same kinds of issues. And then the other documents that we put in on our motion for judicial notice were the judicial incidents in which those exact same issues have come up again. So there is a lot of overlap between the disputes that are — go to the insurance commissioner and the disputes that go to court and the disputes that go to arbitration. And in light of that, you cannot read these two arbitration clauses as consistent with that dispute resolution provision, even if you view them as consistent with each other. With the time I have remaining, I'd like to address the standing issue. This is an interesting issue because of how it's come up. Where in federal court, normally the plaintiff is the one that has a problem showing standing. This may or may not be an Article III issue, but it's certainly an issue under California law because the party seeking to enforce a contract has to show that it has a right to do so. And any way you approach this, they have the burden to do that. The Federal Arbitration Act doesn't create an exception to that standing requirement, and the case in the Eastern District, Aoki, dealt with that issue directly. Other cases talk about the general idea that parties may specify with whom they choose to arbitrate their disputes. Arbitration is a matter of consent. And even the California Court of Appeal in Conecta dealt with the FAA issue and held that it does not compel arbitration by any parties not included in the agreement. With respect to the RPA, we put in evidence that that document was assigned back in 2012 to another entity. They didn't rebut that evidence. The district court just said, well, I'm just going to take that at face value, and I'm not going to give the benefit of the doubt to the non-moving party. I'm just going to assume that, well, since they tried to enforce it, and this was only a draft complaint that you showed us saying that the contract was assigned, I'm just going to disregard that. And I think that that was error by the district court. Does the draft complaint say the contract was assigned, or does it say that the right to collect, you know, in effect, their collection agency, the right to collect amounts owed on it has been assigned? Right. It says that the plaintiff, ARS, was the assignee of certain accounts receivable from applied CIC and OBRA. It doesn't say the contract was assigned. It says accounts receivable. Oh, it does say, because then it says the defendant owes assignee the money, and assignee prays for judgment against the defendant. No, but it says they were assigned accounts receivable. Does it not? Yes, but then it asks, it goes on to ask for relief on behalf of the assignee. Sure. I'm the assignee of accounts receivable, and I want to collect them. It doesn't say the contract was assigned. It says the accounts receivable was assigned. Does it not? The rights to enforce the contract would be the rights to. So you think if you assign, let's assume that Judge Baya owes me money, and I assign the account receivable to a collection agency, does that mean that I no longer have a right to enforce the contract? I believe it does mean that, or you can be joined. Because that's your position, right? Your position is having assigned the accounts receivable. Well, there's no evidence. The contract, all rights under the contract. At a minimum, this raises a genuine issue of fact that needed to be addressed. No, no, there's no genuine issue of fact. The only fact you have is that a complaint was filed that says accounts receivable have  Your legal position is that that fact gives rise to the inability to enforce the contract. The inability of the other side to enforce the contract anymore. They no longer have standing to enforce it. If unroboted, that's correct. Okay. Well, so what case? That strikes me as an extraordinary proposition. If I assign rights to a collection agency to make collections of past due amounts, then I can no longer enforce the contract? I think at a minimum, it raises a question about whether you own the contract, and you're required in bringing your motion to show that you do. Well, they said they did. They said they did, and all you've got is that accounts receivable were assigned, right? That's all you've got. Well, in response to that showing, they simply ignored it. If it's insufficient, they can ignore it. So, I'm just asking, is that all you've got? That accounts receivable were assigned? On the RPA, there are other issues dealt with in the briefing relating to No, with respect to standing. With respect to standing. No, no, no. On standing, there was another issue which was dealt with below. It was kind of glossed over by the district court. It had to do with the transfer of corporate rights from the British Virgin Islands Company Oh, okay. I understand that one. To the U.S. Company of the same name. I understand that one. And the reason that was in there was that that also raised an issue. Now, it's interesting, because the district court accepted the evidence on the reply to satisfy the defendant's burden on the motion, and our position is it's a little too late on the reply to come in with another declaration to properly authenticate all this evidence that you should have authenticated on the sheet. Mr. Naylor, pardon me, Mr. Rafford, you've exceeded your time. I am. Thank you, Your Honor. Thank you. Thank you. Good morning. May it please the Court. My name is Spencer Cook, and I'm on behalf of Mr. Cook, let me ask you a question. Did you handle this case on the trial court? Yes, I did, Your Honor. When you saw that affidavit by Arevalo, Jr. saying this is not my father's signature, right? Did you notice the deposition of the father to find out if he had signed it or not? We did not, Your Honor. Why not? We didn't feel it was necessary. He didn't feel that it was necessary. Correct, Your Honor. Wouldn't that have put the end to this whole issue? Well, Your Honor, our burden is to show that there is an existence of an agreement to arbitrate. You have to prove the authenticity of the signature of Arevalo's father to show that the contract was entered into. Do you not? We do. And it was questioned by an affidavit by a percipient witness who said, A, I'm the son of this Mr. Arevalo. B, I've seen his signature many times. C, this doesn't look like his signature. Doesn't that create a tribal issue of fact as to the authenticity of the signature? No, it does not, Your Honor. Well, it's admissible evidence, is it not? I mean, there's a California statute that makes it admissible evidence. In general, federal evidence cases always say that somebody who's familiar with somebody's signature can testify. It may not be believable, but it creates a fact issue, does it not, about whether or not the senior Mr. Arevalo signed the agreement? We would not agree that it does. Well, of course you don't agree that it does, but why not? Well, Mr. Arevalo, Jr. did not actually say he actually had a conversation with his father. That goes to the weight of the evidence. Surely you can testify that you have a document that appears to be signed by your wife or your partner. You can say, I've lived with that person for 50 years. I've seen that person's signature a thousand times. That's not that person's signature. That would create an issue about whether or not that person had signed the document, would it not? It would not. And let me be very clear. You'd have to actually speak to them and have them say it? Well, I apologize. With respect to the hypothetical, perhaps, but in this case, it would not. And the reason for that, Justice Scalia, is your question was, does this give rise to a question of the authenticity of the execution of that document? And Mr. Arevalo, Jr. never denied that that document was signed by Mr. Arevalo, Sr. He never, for instance, also did not discuss. He said, that doesn't look like my father's signature. He did not, and if I may, Your Honor, he did not say it was not. He did not, for instance, not. Well, how can he say it was not? He would have to. That's correct, Your Honor. He would have to be a guardian angel to his father and see everything the man did and then be able to say he didn't sign the signature. But he says, that's not his signature. And we would, I would agree. He would not be able to competently testify to whether or not that was. He would not be able to competently. You must be making a procedural argument, not an evidentiary one. What you must be arguing is that they have to say more. In denying this, they have to say, we flatly deny there was such an agreement as opposed, because if you're only talking about whether there's sufficient evidence to create a triable issue of fact here, in general, you lose. You've got to be arguing that they have to do more than simply produce this evidence. There are multiple layers to my arguments, Your Honor. First of all, they do have to flatly deny the existence of the agreement. What case do you rely on for that? Well, Your Honor, I suppose there isn't a case. It is just simply common sense. Here we have introduced a document that was ex- Common sense is something you address to the jury. Well, if I may, Your Honor. We're talking about a case. Common sense doesn't help with us. We're not sensible. Well, if I may, Your Honor. The law is not always common sense. Well, if I may, Your Honor, if I may complete the statement, Mr. Revelleau, Jr., not only did not deny the fact that he didn't speak with his father, he can't testify competently to the fact that he's never examined it. You keep saying he didn't deny that it was written by his father. He did. He said that is not my father's signature. He said he did not recognize it. He was not competent to testify to knowing all the signatures. In a normal case, I'm sorry. I don't want to speak over you. But in a normal case, take this outside the arbitration context. You come in and you say, I have a promissory note that I'd like to enforce. It's signed by Judge Bea. I come in and say, Judge Bea writes me letters every day. That's not Judge Bea's signature. Isn't that enough to create an issue of fact about whether he signed it? If that person, Your Honor, was a handwriting expert, and if that person actually had to be an expert, California law allows a layperson to give an opinion. If I may complete the statement, if this person can competently testify to knowing all the different signatures that particular person may use, and also can testify that Mr. Arevalo, Sr., for instance, didn't necessarily authorize someone else, for instance, to sign that signature, because there's a number of reasons how that agreement could be executed. Aren't those alternative explanations for the finder of fact to sort out? Once you put the authenticity of the signature into dispute, and you do so with competent evidence, and we're assuming a layperson, and a California layperson can do that, once you put that into dispute, isn't that all for the trier of fact to sort out, as opposed to him saying, well, you've got to do more? I see where we're going astray here, Your Honor. At a very minimal level, perhaps that declaration by Mr. Arevalo, Jr. may put into doubt, very minimal doubt, as to whether or not Mr. Arevalo, Sr. actually executed that document. Minimal doubt is what gives rise to trials. Well, not in this case, because what is incumbent upon Arevalo to resist the arbitration is to show that there's a genuine dispute over the existence of an agreement to arbitrate. That was the Concat case. And the trial court determined that the declaration by Mr. Arevalo, Jr. wasn't sufficient enough to give rise to a genuine dispute. That's why I asked you before if you're really making a procedural argument. In any normal summary judgment case, we would find this was sufficient to give rise to a genuine dispute about the authenticity of the signature. So are you arguing that in the arbitration context, more is required? Well, I would argue that on review by the Ninth Circuit, that it is not simply for this panel to determine de novo whether or not that issue would have given rise to a genuine dispute of material fact. Do you think there was a trial in the district court? No, no, no. No, I do not. So then we review de novo. No, no. What I'm contending that is, well, no. Upon motions to dismiss and motions to compel arbitration, those are reviewed de novo, except for the factual findings underlying those decisions. But the district judge just looked at the document and said it's not enough. Surely we don't defer to that, do we? Well, Your Honor, if the district court determined as it did that there was an existing agreement to arbitrate, that sounds like a factual conclusion to me. That's a factual determination. That was based upon evidence presented. Let me tell you what the district court said. Arevalo, Jr.'s self-serving statements do not give rise to a genuine issue of material fact. When does a party proffer any evidence that is not self-serving? I don't. That's the whole purpose of advocacy. I probably don't. I would not quarrel with necessarily the use of the word self-serving, but it doesn't take away from the fact that this trial court determined. Nowhere in the papers does plaintiff suggest that Arevalo discussed the RPA or the request to bind with Arevalo, Sr. It's good circumstantial evidence. It might persuade me to say that. It sure is not good evidence from Arevalo, Jr. And the trial court also considered the fact that there was an agreement provided by ACRA by the custodian of records showing that there was an actual execution. And I don't put anything really in this case to your opponent's argument that you didn't meet your initial burden of showing that an arbitration agreement existed. I think you did what you had to. The question is whether the other side said, well, you met your initial burden, but we rebutted it. We brought in Mr. Arevalo, Jr.'s declaration, and he says that's not his father's signature. And so the question in my mind is, why isn't that enough to create a triable issue of fact as to whether or not these agreements were actually entered into? It's not that you didn't meet your initial burden of putting him in. The other side then comes in. I understand that. And the reason I raise that, Your Honor, was to address this, perhaps, the misapprehension that, at least from my perspective, that the trial court did not make a factual determination. Well, see, I don't think the trial court made factual findings here. The trial court determined whether or not the evidence was sufficient to raise a question of fact, and that's the trial court said this is not good enough to raise a question of fact. The trial court didn't make credibility findings. It didn't hear live witnesses. It didn't conduct a trial. Indeed, that's what they're seeking. They're seeking a trial. That I understand. But it is the case that the trial court considered the fact that there were these agreements, that they were provided and they were maintained by the company in the normal course of business, and these agreements show that they were executed by the principal for Arevalo. If Mr. Arevalo Sr. had filed an affidavit saying that's not my signature, you'd have a triable case, wouldn't you? I would say that the trial court would have not abused its discretion to determine that a trial was needed. Well, indeed, had the trial court determined that a trial was not needed, we would have reversed it under those circumstances, right? I'm sorry, I don't understand the question. Mr. Arevalo Sr. signs an affidavit or declaration that says that's not my signature. Right. At that point, the trial court is compelled to have a trial, is it not? I would agree that it would have. Okay. So your position is that's good enough, but the affidavit by Arevalo Jr. is not good enough. There's two responses, if I may. One, it is not good enough. It didn't give rise to a genuine dispute or material fact as to the existence of an agreement to arbitrate. And second of all, again, I disagree. There is a factual determination by the LA court, and if there is, the standard is clear. I better talk to the other two guys about that because I don't see how the district judge could have made a factual determination merely reading papers. I apologize. It appears that the courts, this court, I thought, contemplates the ability to determine factual issues on motions to dismiss and motions to compel arbitration. And we know that because we have a lot of cases that do say review of motions to compel arbitrations or motions to dismiss are reviewed de novo except with regards to factual facts. And what you're having difficulty with me on is convincing me that the district court made any factual determination here. If the district court determined that Mr. Arevalo's affidavit was untrustworthy, then he erred in doing so without having a trial. It seems to me that that determination was a belt and suspenders determination that was in addition to the fact that there were agreements with arbitration provisions therein that were provided to the court. Well, and that takes me back to the Second Circuit case. I'm interested in your take on it. I'll find a name, but you know what case I'm talking about. The Second Circuit seems to say, look, if you're going to contest arbitration, you need to say something very explicit like, we never signed that agreement. We never entered into that agreement, as opposed to just being somewhat cute, which is what I think happened here. Do you think that that case requires more than what they did here? And I'll give you the answer. Certainly, yes, that case does require more than what was happened. So what does it require? It does require an affirmative statement by way of an affidavit or declaration. An affirmative statement that says we did not enter into an arbitration agreement. By that signator. Well, there's two separate questions. Look, the pleading can say we did not enter into an arbitration agreement. Then the evidence in support of that might be different. I'm asking as a procedural matter, what do you have to say in opposition to a motion to compel arbitration to require the court to determine whether or not there's a genuine agreement? I would say it would be an affidavit confirming that or stating that that agreement to arbitrate was not entered into by a rebel. And has our court ever, your opponent says, I think correctly, our court's never adopted that position. Why should we? Well, I think we should adopt that position. Well, I know you think we should. Why should we? Well, it does set forth a very clear standard for determining whether or not a motion to compel can be granted or denied. Is that because of some consideration peculiar to arbitration agreements or would it apply to promissory notes or construction agreements? Well, certainly with arbitration agreements, there is the federal policy favoring the enforcement of arbitration provisions. AT&T Mobility tells us that we apply standard methods of contract construction to determine whether there is an agreement to arbitrate, and if so, whether the subject is within that agreement for arbitration. We don't deal with arbitration agreements differently from promissory notes or contracts of construction, do we? I would say not normally except with the enforcement of arbitration agreements. There is a strong federal policy that does bear in favor of enforcing. But you can't enforce an agreement that doesn't exist. Step one is, is there an agreement? Step two, let's enforce it. I see what you're saying, Your Honor. No, then in that respect, there wouldn't be a distinction or there shouldn't necessarily be a distinction between arbitration agreements or other types of agreements. Wasn't the contract otherwise performed by Mr. Arevala? Wasn't the contract performed by Mr. Arevala? It absolutely was. And we know because through the request to bind, it does provide specifically, you won't get insurance unless you execute this. By the way, I should be clear. I don't see how they possibly prevail on this claim if it tried, but that's not the question in front of us. I understand. So is the performance, does performance moot the issue of contract formation? Well, performance in some ways, I think it really goes to the point of ratification, for instance, that even if Mr. Arevala was not the signator, by performing on the contract, there's ratification of the terms of the contract. Was there performance on the separate, I want to call it the REN contract, but on the? The RPA, the reinsurance participation. The reinsurance contract. Was there performance on that as opposed to the underlying contract of insurance? Absolutely. The program charges on the program are calculated in accordance with the reinsurance. And were they mailed to somebody different than would have gotten them ordinarily? No. All the communications from the companies would have went to Arevala. But they were charges different than the basic contract of insurance would have called for. So to be very clear, there are the insurance policies which have their own premiums and assessments. There are the program charges under the RPA. Program charges do encompass the premium charges. Right. So they are different, yes. They're different, but they encompass them. They do. Okay, and they were paying them along the way. Yes, they were. And if I may just really very quickly, I know that counsel had made reference very briefly in the briefs, in the reply brief to the Nebraska Uniform Arbitration Act, which he contends invalidates the arbitration provisions. He's also referred to the Shasta decision and some other cases where they talked about, in those cases there was an argument that the arbitration agreement or the RPAs were void because they weren't filed with the Department of Insurance. I only want to note that these were not issues raised below. They were issues not raised in the opening. Wouldn't those be issues for the arbitrators? And they would be issues for the arbitrators. If these are valid agreements, if these are signed agreements, then sorting out their conflict and where stuff gets arbitrated is for the arbitrators. Absolutely. And that's the sort of thing, if it had been raised, it would have raised Rennes Center, the Buckeye case, those challenges to the agreements as a whole or the enforcement or the meeting, all those issues would go to the arbitrator to decide. All right. Thank you very much. We've exhausted your time. Thank you. Thank you for the argument. And the Court will stand adjourned for about 20 minutes. Did we save any time? Oh, you have some rebuttal time. I have one minute. Oh, pardon me, Mr. Rafford. I thought that you had exhausted your time, but you haven't. Go ahead. Thank you, Your Honor. With regard to the issue of performance and ratification, as I mentioned earlier, if this issue goes to a jury under Section 4, then ratification raises not only issues of fact under the Civil Code 1589 and 1588, did my client know all material facts when it made payments for the insurance? That's a factual question. The case in Bergoon 125F sub 3rd 974, 2015 case from the Northern District, deals with that. Secondly, there's a legal issue, and Your Honor has a question on it. Well, my question is, the only question of fact you raised below, the only submission you made, was the affidavit or declaration of Mr. Ravo, Jr., right? Yes. Well, you didn't send in other submissions that said, hey, if we did sign this, we didn't understand it, or they didn't tell us stuff. So you're required to create an issue of fact. If you created an issue of fact, it's only on one question in my mind, which is whether or not your client signed it. You didn't create an issue of fact on anything else. Right, but I think we'd be entitled if we did. You can make that argument to the district judge if we send it back. All right. The second point I want to address quickly has to do with the burdens for each side. And I think when we talk about what is a genuine issue and what is a minimal issue, what we're talking about is whose burden really is it on this motion to show by preponderance of the evidence what they're trying to show.  And it's our burden to show the existence of that fact. The stronger evidence doctrine, which – The existence of that fact question. Yeah. Pardon? Pardon me. Go ahead. I was just going to mention that the whole issue about whether Arevalo, Sr. could have submitted a declaration versus whether Appellee could have submitted additional evidence or taken a deposition. Again, it goes to that issue of whose burden is it. The stronger evidence doctrine, if it applies at all, should apply in our favor against them, not the other way around. Thank you. Thank you very much. We're adjourned for the next 20 minutes, and we'll be back for the very last case. All rise.
judges: Bea, Hurwitz, Motz